UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JERRY HOOKS,<br><br>          Plaintiff,<br><br>    vs.<br><br>BRUCE BANNISTER, et al.,<br><br>          Defendants. | 3:12-cv-00682-RCJ-WGC<br><br>**ORDER**<br><br>**re: Doc. ## 75, 84 and 95** |

**I. Background**

Plaintiff Jerry Hooks (Hooks) is a prisoner in custody of the Nevada Department of Corrections (NDOC) at the Ely State Prison (ESP). Plaintiff commenced a civil right action on December 26, 2012. (Doc. # 1.)[1] Plaintiff was ordered to file an amended complaint to conform to the court's order of March 14, 2013. (Doc. # 6.) An amended complaint was submitted on April 15, 2013. (Doc. # 14.) His action, predicated upon 42 U.S.C. §§ 1983 and 1985, sued fifty-one (51) defendants who are associated with the NDOC.

The amended complaint was screened by District Judge Robert C. Jones on September 6, 2013. (Doc. # 35.) Counts I and II were not found to set forth viable civil rights claims and were dismissed with leave to amend. (*Id*.). Counts III, VII and IX were determined to set forth colorable Eighth Amendment claims against Defendants Koehn, Gregerson, Holmes, Smith(s), Bannister, Byrne, Cox, Boss, Baker and Foster and colorable First Amendment retaliation claims against Defendants Koehn, Gregerson and Holmes.

---

[1] Refers to court's docket number.

1. Judge Jones concluded Count IV stated no plausible Eighth Amendment or due process claim. Count V was dismissed as to Defendant Weiss. Count VI was determined to be duplicative to Count IV and was dismissed. Count VIII did not state any cognizable liberty interest and was dismissed. Count X appeared to assert a sexual harassment complaint which Plaintiff pursued in response to notice of charges filed against Plaintiff. Plaintiff was found not guilty of the charges and Judge Jones could therefore discern no violations of Plaintiff's constitutional rights. Last, Judge Jones concluded Plaintiff's allegations against twenty-eight other defendants averred no colorable claims against them and were dismissed.

Summarizing, therefore, Plaintiff's surviving causes of action assert his Eighth Amendment rights were violated when certain defendants were deliberately indifferent toward Plaintiff's medical needs and that his First Amendment rights were violated when Defendants allegedly retaliated against him.

Plaintiff's motion to amend and supplement his complaint (Doc. # 42) was denied. (Doc. # 50.) Several earlier motions to amend or alter the court's screening order (Docs. ## 47, 48, 51) were also denied. (Docs. ## 50, 69.) Plaintiff filed a notice of appeal as to certain orders (Doc. # 57) but the Ninth Circuit Court of Appeals dismissed Plaintiff's Appeal. (Doc. # 108.)

Defendants have filed a motion for summary judgment. Defendants' argue:

**I. NATURE OF THE MOTION**

> Defendants are entitled to judgment as a matter of law because: (1) Plaintiff cannot present a genuine dispute as to any material fact because Defendants did not act with deliberate indifference towards Plaintiff's health or safety in violation of his Plaintiff's Eighth Amendment (sic); and (2) Plaintiff cannot present a genuine dispute as to any material fact because Defendants did not violate Plaintiff's First Amendment Rights by retaliating against him.

Doc. # 75 at 2 (bold in the original).

Certain of Defendants' arguments are predicated upon assertions they are entitled to summary judgment because there is no genuine issue of material fact as to Plaintiff's civil rights claims. Other causes of action are attacked under a theory Plaintiff failed to exhaust his administrative remedies (i.e., incomplete satisfaction of the grievance process). Defendants also allege certain of Plaintiff's averments do not satisfy the *Iqbal* requirements of a "short and plain statement of the claim showing [Plaintiff] is entitled to relief." (Doc. # 75 at 21, citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).) Additionally, certain defendants assert a "qualified immunity affirmative defense" as well as other arguments relating

2

to his retaliation claims.

The purpose of this order is to address whether Plaintiff should be allowed to undertake "targeted discovery" with regard to Defendants' arguments on summary judgment.

**II. The History Relating to Plaintiff's Proposed Discovery Motions**

Before the court is Plaintiff's "F.R.C.P. 56(d) Motion for Deferring Time to Respond" (Doc. # 84) and Plaintiff's request for leave to undertake targeted discovery (Doc. # 95, filed as "Reply to the Court's Requirement for Requested Discovery Process"). Plaintiff's motions were filed relative to Defendants' Motion for Summary Judgment. Defendants opposed Plaintiff's Motion for Deferring Time to Respond. (Doc. # 86.)

By way of background, Plaintiff on March 14, 2014, filed a motion to conduct discovery. (Doc. # 61.) The court denied that request because Defendants had not yet responded to Plaintiff's complaint. (Doc. # 65.) The Defendants requested an extension of time to respond to Plaintiff's complaint. (Doc. # 71) and Defendants were allotted an extension to May 12, 2014. (Doc # 72.)[2]

The Defendants then filed their motion for summary judgment.[3] (Doc. # 75.) At a status conference which followed, Plaintiff asserted he needed time to conduct discovery to be able to respond to Defendants' motion for summary judgment. The court advised Plaintiff:

> If Plaintiff believes that he needs to conduct discovery in order to respond to Defendants' motion for summary judgment, he may file a motion under Federal Rule of Civil Procedure 56(d), supported by an affidavit or declaration, stating that he needs to conduct discovery in order to present facts essential to oppose the motion, and seeking an order deferring the time to respond to Defendants' motion for summary judgment. Fed. R. Civ. P. 56(d). If Plaintiff intends on filing such a motion, he should do so promptly. *See Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009). In any such motion, Plaintiff must specifically identify the relevant information he seeks to discover and show that there is a basis for believing that the information sought actually exists. *Id*.

Doc. # 80 at 5.

On May 27, 2014, Plaintiff field a motion to enlarge the time (30 days) to respond to Defendants' motion for summary judgment (Doc. #82), which the court granted (Doc. # 73). Plaintiff's response to

---

[2] Plaintiff's motion to set aside the extension (Doc. # 74) was denied. (Doc. # 80 at 5.)

[3] Defendants' Motion for Summary Judgment was the Defendants' first substantive appearance in this matter.

3

Defendants' motion for summary judgment was extended to July 7, 2014. (*Id.*)

On June 5, 2014, Plaintiff filed his motion to defer responding to Defendants' motion to conduct discovery (Doc. # 84) which is, in part, the subject of this order. The court conducted a hearing regarding Plaintiff's motion on June 18, 2014. The court found that Plaintiff's motions for extension of time to undertake discovery did not satisfy Fed. R. Civ. P. 56(d) in that the motions did not specifically identify the relevant discovery Plaintiff sought to undertake, nor did Plaintiff explain how that discovery, if permitted, might preclude the entry of summary judgment. Resolution of Defendants' motion for summary judgment, however, was stayed until the court had reviewed the proposed discovery Plaintiff wanted to undertake. Plaintiff was directed to file a memorandum regarding the proposed "targeted" discovery (i.e., discovery specifically tailored to the issues presented by Defendants' motion for summary judgment), no later than Friday, July 11, 2014. (Doc# 89 at 2.)

On June 26, 2014, Plaintiff sought additional time to outline his proposed discovery. (Doc. # 90.) The court denied Plaintiff's request and directed him to comply with the July 11, 2014, deadline. The court stated as follows:

> If Plaintiff can correlate the relevance of his targeted discovery to the issues presented by Defendants' motion for summary judgment, then Plaintiff will likely be allowed to undertake that discovery. If he fails in that obligation, then this discovery will not be permitted. See, e.g., *Nieves-Romero v. U.S.*, 715 F.3d 375, 381 (1st Cir. 2013); *Pa. Dep't of Public Welfare v. Sebelius*, 674 F.2d 139, 157 (3rd Cir. 2012).
>
> At the court's hearing on various motions on June 18, 2014, the court provided the parties–primarily Plaintiff–a fairly liberal deadline and briefing schedule. Granting Plaintiff's motion would likely cause all of those deadlines to be vacated and rescheduled. Since there isn't even a current deadline for Plaintiff's opposition to Defendants' motion for summary judgment (the court stayed that deadline until the question of motion-related discovery has been resolved), Plaintiff is not prejudiced by any denial of his motion.
>
> Therefore, Plaintiff's motion (Doc. # 90) is **DENIED**, and Plaintiff shall adhere to the deadline for submission of his proposed targeted discovery, i.e., **July 11, 2014.** Because of the upcoming holiday, counsel for Defendants shall fax or email a copy of this order to Ely State Prison and direct immediate delivery to Plaintiff.

Doc. #92 at 2.[4]

///

///

---

[4] Plaintiff filed an objection to the scheduling of the discovery/summary judgment issues (Doc. # 93), but that objection has not yet been ruled on.

**III. Proposed Targeted Discovery**

As discussed above, on the issue of "targeted discovery," Plaintiff filed a "Reply to the Court's Requirement for Requested Discovery Process." (Doc. # 95; "Reply.") This submission was followed by a document entitled "'Targeted Discovery' Declaration." (Doc. # 96; "Declaration.") Defendants responded to Plaintiff's proposed discovery in "Defendants' Opposition to Plaintiff's Reply to the Court's Requirement for Requested Discovery Process" (Doc. # 97; "Opposition") and Plaintiff replied, "Response to Defs (sic) Discovery (Doc. # 106; "Response.")

The court's intent regarding the scope of the discovery Plaintiff was seeking leave to undertake pursuant to Rule 56(d) was to insure any such discovery narrowly focused on the issues Defendants raised in their dispositive motion, i.e., the "targeted discovery." Unfortunately, the court cannot discern from Plaintiff's filings (Docs. ## 95, 96 and 106) the precise nature of the discovery Plaintiff is seeking to undertake. It appears to the court Plaintiff seeks to serve requests for production/inspection and requests for admissions. However, as Defendants have noted in their opposition, certain of Plaintiff's proposed discovery are not limited to matters raised by Defendants' motion for summary judgment but rather, address issues which are not even within the scope of claims in Plaintiff's amended civil rights complaint which were allowed to proceed by the screening order. (Doc. # 97 at 2.)

This, unfortunately, was *not* what the court meant by "targeted discovery." Therefore, to attempt to re-define the scope of discovery which might be allowed under Rule 54(d), the court has duplicated each topic from Defendants' motion for summary judgment which describes the subject of Plaintiff's corresponding civil rights allegation. Those subjects appear as an Appendix to this Order. An example appears below with regard to topic "**a.**" from Defendants' motion:

**a.   Count III, Deliberate Indifference Claim Against Defendant Koehn**

   i. Defendant Koehn Complied with NDOC Admin. Reg. 635 and ESP Protocol when he Confiscated Plaintiff's KOP Medications in February 2011

   ii. Plaintiff's Allegation that Defendant Koehn Deprived Plaintiff of a Cardiologist Consult in February of 2013 does not Constitute Deliberate Indifference.

   iii. Plaintiff Cannot Present Factual Evidence Supporting a Triable Deliberate Indifference Claim Against Defendant Koehn for his Tooth Pain.

As the excerpt above reflects, Defendants in the captions of their arguments relative to Count III have

synthesized Plaintiff's allegations of "deliberate indifference" as to Defendant Koehn. The discovery the court contemplated Plaintiff would propose as to Defendant Koehn's argument would be discovery relevant to Dr. Koehn's alleged deliberate indifference. Similarly, the court anticipated Plaintiff would propose discovery as to the other subjects of Defendants' motion, i.e., topics **b.** through **g.** set forth in the Appendix.

Plaintiff is therefore directed, within **thirty (30) days of the date of this Order**, to submit the <u>actual discovery</u> (e.g., requests for production, requests for admissions or interrogatories) Plaintiff proposes to be served on the Defendant who has asserted entitlement to summary judgment. For example, using Dr. Koehn as the subject, Plaintiff should submit the discovery he proposes as to Dr. Koehn's alleged deliberate indifference. Plaintiff's proposed discovery should be labeled so as to correspond to the argument the defendant is asserting (as per the Appendix).

The court notes that some of the allegations Plaintiff has asserted – and Defendants have challenged – overlap, such as assertions related to discontinuing medication in topics **a.** and **b.** Plaintiff's proposed discovery should not be repetitive. Should Plaintiff choose to proceed with interrogatories, he must also be mindful of the limitations on the number of interrogatories he is permitted to serve as to each Defendant. Pursuant to Fed. R. Civ. P. 33 (a)(1), unless otherwise stipulated or ordered by the court, a party may serve on any other party <u>no more than twenty-five (25) written interrogatories, including discreet subparts</u>.

After Plaintiff submits his proposed discovery, Defendants shall have **fourteen (14) days** to respond to the proposed discovery Plaintiff requests to undertake. The court will calendar a discovery conference in late January, 2015, to address the scope of allowable discovery (to be vacated if Defendants acquiesce in the discovery Plaintiff wants to undertake).

With regard to the proposed discovery, however, the court issues the following preliminary rulings:

1) Again, Plaintiff must be mindful his proposed discovery should be focused on the issues raised by the motion for summary judgment. Broad, rambling discovery or discovery not pertinent to the issues presented by the motion for summary judgment will not be permitted.

2) Defendants should be aware that the Court most likely will permit Plaintiff to proceed with

6

1  discovery that is authorized by Rule 56(d).

2  The court also notes that the discovery which Plaintiff has already propounded, and to which
3  Defendants have objected, included a request for "reprimand letters" contained in Defendants' personnel
4  files. The Defendants argue that reprimand letters are (1) irrelevant and (2) confidential under the
5  Nevada Administrative Code and NDOC regulations. Defendants characterize their argument as based
6  on privilege and therefore the reprimands, if any, are therefore not discoverable.

### A. Relevance of Reprimand Letters

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil actions, and provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Accordingly, the first limitation on permissible discovery is that it be relevant. *See, e.g., Dowell v. W.T. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. Aug. 17, 2011) (stating that the court must address whether the requested documents are relevant before engaging in the privilege analysis). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppehnheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 1978 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

A party may obtain discovery regarding any "matter that is relevant to any party's claim or defense….[and] [f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).

Insofar as Plaintiff's request to produce *all* reprimands, the court finds the request is overbroad and *not* designed to lead to the discovery of admissible evidence. Any reprimands which may be found in defendants' personnel files would likely be extraneous to the issues presented by Plaintiff's allegations and could give rise to consideration of issues not material to the claims Plaintiff has asserted. However, the court would entertain a request from Plaintiff for production of reprimands *if* the subject of the

reprimand, *if any*, pertained to the subject of Plaintiff's allegations.

### B. Confidentiality/Privilege as to Reprimand Letters

The second limitation on discovery is that the matter sought be nonprivileged. In a federal question case, such as this one brought pursuant to 42 U.S.C. § 1983, privilege is determined by federal common law. Fed. R. Evid. 501; *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Breed v. United States Dist. Ct. for Northern Dist.*, 542 F.2d 1114, 1115 (9th Cir. 1976) (action brought under 42 U.S.C. § 1983).

"In a civil rights case brought under federal statutes questions of privilege are resolved by federal law." *Kerr*, 511 F.2d 192, 197 (9th Cir. 1975); Fed. R. Evid. 501. As the United States District Court for the Northern District of California pointed out:

> It…would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). This does not mean, however, that courts can just ignore state privilege doctrine. See id. ("federal courts generally should give some weight to privacy rights that are protected by state constitutions and state statutes"); see also *Boar, Inc. v. County of Nye*, 2:08-cv-01091-PMP-RJJ, 2010 WL 5070888, at * 2 (D. Nev. Oct. 15, 2010).

Federal law governing privilege has not been codified; instead, "[t]he common law – as interpreted by United States courts in the light of reason and experience - governs any claim of privilege" unless otherwise provided by "the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.

As a result, while the court may give some weight to the State confidentiality interests contained in NAC 284.718 and the NDOC Administrative Regulations referred to by Defendants (Doc. # 97 at 3), these provisions do not control the determination of the applicability of privilege in this case as Defendants have argued. Nevertheless, federal courts have recognized a qualified privilege for "official information." *See Kerr*, 511 F.2d at 198. Personnel files and complaints made against government employees have been considered "official information." *Id.; see also Sanchez v. City of Santa Ana*, 936

8

F.2d 1027, 1033 (9th Cir. 1990) (citation omitted). Although Defendants did not specifically refer to the official information privilege, nor did they discuss it, they have adequately noted the privilege for the purposes of this order.

When a party asserts this privilege, courts must engage in a balancing analysis to determine whether the potential benefits of disclosure outweigh the potential disadvantages. *Id.; see also Sanchez,* 936 F.2d at 1033 (citation omitted); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly*, 114 F.R.D. at 656.

The court has preliminarily determined in the context of permissible discovery that the potential benefits of disclosure of "reprimands" specifically related to any alleged misconduct of the Defendants, if any, outweigh the potential disadvantages and, if they do exist, should be made available to Plaintiff for inspection.[5]

## C. Discoverability vs. Admissibility

Defendants also argue materials from personnel files are irrelevant under the Federal Rules of Evidence. (Doc. # 97 at 4-5.) That argument, however, is rejected. The Federal Rules of Evidence pertain to admissibility *at trial*, not discovery. Admissibility at trial is not the test for relevancy in discovery. Fed. R. Civ. P. 26(b)(1) is clear that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." However, the court will rule preliminarily on the relevance from the discovery standpoint and the confidentiality/privilege argument Defendants have asserted.

Briefing on Defendants motion for summary judgment (Doc. # 75) will remain **STAYED** until further order of court.

**IT IS SO ORDERED.**

DATED: December 2, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

[5] If there are any reprimands in Defendants' personnel files relevant to the allegations of Plaintiff's civil rights claims, production of those document may be completed by allowing Plaintiff to review them in a secure environment outside of his cell.

# APPENDIX

a.  **Count III, Deliberate Indifference Claim Against Defendant Koehn**

   i.  Defendant Koehn Complied with NDOC Admin. Reg. 635 and ESP Protocol when he Confiscated Plaintiff's KOP Medications in February 2011

   ii. Plaintiff's Allegation that Defendant Koehn Deprived Plaintiff of a Cardiologist Consult in February of 2013 does not Constitute Deliberate Indifference.

   iii. Plaintiff Cannot Present Factual Evidence Supporting a Triable Deliberate Indifference Claim Against Defendant Koehn for his Tooth Pain.

b.  **Count III, Deliberate Indifference Claim Against Defendant Koehn and Defendant Smith.**

   i.  Defendant Koehn and Defendant Smith's Discontinuance of Plaintiff's Medications in April 2011 did not Constitute Deliberate Indifference.

   ii. Defendant Koehn and Defendant Smith's Confiscation of Plaintiff's Medications in February of 2013 Did Not Constitute Deliberate Indifference.

c.  **Count III, Deliberate Indifference Claim against Gregersen and Holmes.**

   i.  Plaintiff Failed to Exhaust the NDOC Administrative Grievance Process with Respect to his Deliberate Indifference Claim Against Defendant Holmes.

      1.  Prison Litigation Reform Act of 1996.

      2.  NDOC Administrative Grievance Procedure.

      3.  Plaintiff Did Not Properly Exhaust The NDOC Administrative Grievance Process with Respect to his Count III Deliberate Indifference Claim Against Defendant Holmes.

   ii. Plaintiff was Provided the Correct Medication by Defendant Gregersen and Cannot Submit Evidence to Support his Claim for Deliberate Indifference.

d.  **Count III, VII, and IX, Deliberate Indifference Claim Against Defendants Baker, Foster, Byrne, Bannister and Cox.**

   i.  Plaintiff's Complaint Fails to Meet the Lenient Pleading Standard of Fed. R. Civ. P. 8 and Therefore Failed to State a Claim Against Defendants Baker, Foster, Byrne, Bannister and Cox.

   ii. Defendant Baker, Foster, Byrne, Bannister and Cox are Entitled to Qualified Immunity.

   second # ii. Plaintiff Cannot Establish Defendants Baker, Foster, Byrne, Bannister and Cox were Personally Involved in Violating his Eighth Amendment Rights.

   iii. Plaintiff Cannot Establish Supervisory Liability for Defendants Baker, Foster, Byrne, Bannister and Cox.

 **e. Counts III, VII, and IX, Plaintiff's Retaliation Claim Against Defendant Koehn**

  i. Plaintiff Cannot Raise Triable Issues of Fact Showing that Defendant Koehn's Actions Support a Retaliation Claim.

 **f. Count III, Retaliation Claim Against Defendants Gregersen and Holmes**

  i. Plaintiff Failed to Exhaust the NDOC Administrative Grievance Process with Respect to his Retaliation Claim Against Defendant Holmes.

  i. [second #] Plaintiff Failed to Exhaust the NDOC Administrative Grievance Process with Respect to his Retaliation Claim Against Defendant Gregersen.

  ii. Plaintiff's Cannot Raise Triable Issues of Fact Supporting a Retaliation Claim Against Defendant Gregersen.

 **g. Count V, Retaliation Claim Against Defendant Cruse**

  i. Plaintiff Failed to Exhaust the NDOC Administrative Grievance Process with Respect to his Retaliation Claim Against Defendant.

  ii. Plaintiff's Complaint Fails to State a Retaliation Claim Against Defendant Cruse.